UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KAMALADOSS V. SELVAM,

                Plaintiff,        Civil Action No. 12-CV-1828 (DLI)(JO)

vs.                                  AMENDED COMPLAINT

EXPERIAN INFORMATION SOLUTIONS, INC.

                Defendants.

---

## AMENDED COMPLAINT

1. The Plaintiff, Kamaladoss V. Selvam, by and through the undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows :

### I. PRELIMINARY STATEMENT

2. Plaintiff brings this action pursuant to the federal Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, and the State of New York's Fair Credit Reporting Act, N.Y. Gen. Bus. L. §380, *et seq.*, against the Defendant. This action alleges that the Defendant A) published negative account information regarding the Plaintiff to third parties while failing to disclose this information to the Plaintiff on his consumer reports, B) failed to maintain the procedures necessary to ensure that the Plaintiff and other similarly situated consumers were being furnished with accurate reports, and C) failed to properly investigate any disputes and fraud alerts by the Plaintiff.

3. The actions and omissions of the Defendant have caused severe financial and emotional

1

damage to the Plaintiff. The consumer reports that were created by the Defendant did not contain any negative information that was being reported to third parties, and because the Plaintiff was not able to properly inspect and dispute information on his report, he was, *inter alia,* denied a home mortgage and provided unfavorable terms on an automobile loan.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1337.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) and (c) because the events or omissions giving rise to the claim occurred in this District, and Defendant is a corporation doing business in this judicial district.

6. This Court has authority to grant monetary, injunctive and other relief pursuant to 15 U.S.C. § 1681(p), and N.Y. Gen. Bus. Law § 349.

## III. PARTIES

7. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

8. The Plaintiff is a resident of Queens, New York. The Plaintiff has been residing continuously in Queens, New York, for more than ten years.

9. The Plaintiff is a "person" as defined by the federal Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. § 1681a(b).

10. The Plaintiff is a "consumer" as defined by FRCA, 15 U.S.C. § 1681a(c).

11. The Defendant, Experian Information Solutions, Inc., (hereinafter "Experian") is a foreign business corporation with its principal executive office at 475 Anton Blvd., Costa Mesa, CA 92626-7036.

12. Defendant Experian is a "consumer reporting agency" as defined by FCRA, 15 U.S.C. §1681a(f).

13. Defendant Experian has been generating, creating, and distributing "consumer reports," as defined by FCRA, 15 U.S.C. § 1681a(d)(1), on the Plaintiff for more than ten years.

## IV. STATUTORY FRAMEWORK

### A. Fair Credit Reporting Act

14. FCRA, 15 U.S.C. §§ 1681 *et seq.*, governs the content, issuance and use of consumer reports prepared for a variety of purposes.

15. FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

16. Section § 1681a(d)(1) of FCRA defines "consumer report" as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility…..

for any purpose set forth in 15 U.S.C. § 1681b.

17. An "adverse action" occurs when a person takes an action or makes a determination connected to a consumer's application that is adverse to the consumer's interests. 15 U.S.C. §1681a(k)(1)(b)(iv).

18. A "fraud alert" means a statement by a consumer that "notifies all prospective users of a consumer report relating to the consumer that the consumer may be a victim of fraud." 15 U.S.C. §1681q(2)(A).

19. "Negative information" is defined in FCRA as "information concerning a consumer delinquencies, late payments, insolvency, or any form of default."

20. A consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b).

21. Upon request, a consumer reporting agency must clearly and accurately disclose to the consumer information in the consumer's file under §1681g(a)(1).

22. If the completeness or accuracy of a consumer's file is disputed by the consumer, the consumer reporting agency shall conduct a reasonable reinvestigation of disputed information. 15 U.S.C. §1681i(a)(1)(A).

23. A consumer reporting agency shall provide notification of consumer disputes to any person who provided any item of information in dispute. 15 U.S.C. §1681i(a)(2)(A).

24. After making a determination in accordance with FRCA that a dispute is frivolous or irrelevant, a consumer reporting agency "shall notify the consumer of such determination no later than 5 business days after making such determination…" 15 U.S.C. §1681i(a)(3)(B).

25. FCRA imposes civil liability for willful noncompliance with the statute, providing for actual damages, punitive damages, costs and attorney's fees. 15 U.S.C. §1681n.

26. FCRA also imposes civil liability for negligent noncompliance with the statute, providing for actual damages, costs and attorney's fees. 15 U.S.C. §1681o.

### B. New York Fair Credit Reporting Act

27. The New York Fair Credit Reporting Act (hereinafter NY FCRA), N.Y. Gen. Bus. L. § 380 *et seq.*, governs the content, issuance and use of consumer reports prepared for a variety of purposes, including housing transactions.

28. NY FCRA defines "person" as "any individual, partnership, corporation, trust, estate, co-operative, association, government or governmental subdivision, agency or other entity." N.Y. Gen. Bus. L. § 380-a(a).

29. NY FCRA defines "consumer report" as

> any communication by a consumer reporting agency of information that bears on an individual consumer's credit worthiness, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or part for the purpose of serving as a factor in establishing the consumer's eligibility . . ., N.Y. Gen. Bus. L. § 380-a(c)(1).

30. A consumer reporting agency is civilly liable for willful noncompliance with the statute, and is liable for actual damages, punitive damages in the court's discretion, and costs and attorney's fees. N.Y. Gen. Bus. Law § 380-l.

31. A consumer reporting agency is civilly liable for negligent noncompliance with the statute, is are liable for actual damages and costs and attorney's fees. N.Y. Gen. Bus. Law § 380-m.

### V. FACTS

32. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33. The Plaintiff currently resides in Queens, New York. For the three years preceding the filing of this Complaint, the Plaintiff had been planning to buy a house in upstate New York with his fiancé.

34. On or about January, 2011, the Plaintiff applied for a car loan from the Municipal Credit Union ("MCU").

35. During the car loan application process, the Plaintiff was informed by an MCU representative that a loan could not be provided unless the Plaintiff placed a 20% down payment.

36. The above-mentioned representative stated that the down payment was required because the Plaintiff's credit report showed several delinquencies.

37. The Plaintiff was shocked by this news and emotionally distressed, unable to understand why his credit report would have contained several delinquencies.

### A. Missing Information on Experian's Consumer Reports on Plaintiff

38. On or about January, 2011, the Plaintiff filed a fraud alert with a credit reporting agency.

39. The Defendant received information about the fraud alert from other consumer reporting agencies.

40. In response to the fraud alert, the Defendant provided the Plaintiff a consumer report dated February 24, 2011, bearing report number 2437-9396-64.

41. The aforementioned consumer report stated that "we were notified by one or more nationwide consumer credit reporting companies that you recently reported them that you believe information in your credit report is inaccurate due to fraud . . . . please take some time to review your credit report."

42. On pages 2 and 4 of the aforementioned consumer report the following was stated: "THIS PAGE IS INTENTIONALLY LEFT BLANK."

43. The aforementioned consumer report did not contain any information that explained why pages were "INTENTIONALLY LEFT BLANK."

44. The aforementioned consumer report did not contain any "negative information."

45. Upon information and belief, the Defendant was reporting negative information to third parties when the Plaintiff received the above-mentioned report.

46. Upon information and belief, the Defendant has been reporting negative information to third parties for more than ten years without providing the Plaintiff any reasonable opportunity to inquire about such negative information.

47. Because the Defendant furnished the Plaintiff with a report with no negative information, the Plaintiff believed that the Defendant was not reporting any negative information to third parties.

**B. Complete Reports and Corrected Negative Information by Other Agencies**

48. Pursuant to the fraud alert, another credit reporting agency, Equifax Inc. ("Equifax"), provided the Plaintiff with a consumer report which did contain negative information.

49. The Plaintiff noticed several inaccuracies on the Equifax report regarding negative information. The Plaintiff informed Equifax about all the entries that were inaccurate, and Equifax promptly corrected the report by removing negative information.

50. Pursuant to the fraud alert, another credit reporting agency, Trans Union Corp. ("Trans Union", provided the Plaintiff with a consumer report which did contain negative information.

51. Plaintiff noticed several inaccuracies on the Trans Union report regarding negative information. The Plaintiff informed Trans Union Corp. about all the entries that were inaccurate, and Trans Union Corp. promptly corrected the report by removing negative information.

52. Equifax's and Trans Union's response to the fraud alert provide a basis of comparison to the way in which the Defendant responded, as explained *supra* and *infra*.

53. The Plaintiff did not have the opportunity examine negative information on any consumer reports provided by the Defendant because the Defendant provided the Plaintiff with consumer reports that did not contain any negative information.

### C. The Plaintiff is Denied a Home Loan

54. On or about May, 2011, the Plaintiff applied for a home mortgage with Wells Fargo Bank, N.A.

55. The Plaintiff applied for this mortgage unaware that the Defendant was reporting negative information to third parties.

56. The Plaintiff applied for the home mortgage believing that all inaccuracies on his consumer reports were corrected.

57. The Plaintiff's home mortgage application was denied within a few weeks of his application.

58. The Plaintiff was informed by a Wells Fargo Home Mortgage Consultant, Barry Wellen, that his application was denied because of negative information that was being reported to Wells Fargo Bank, N.A., by the Defendant.

59. Mr. Wellen explained to the Plaintiff that the negative information that was being received regarding the Plaintiff was coming only from the Defendant.

60. Mr. Wellen explained to the Plaintiff that negative information was not coming from Equifax, Inc., or Trans Union Corp. Negative information was only coming from the Defendant.

61. Upon hearing this explanation from Mr. Wellen, the Plaintiff was angry, shocked confused, and severely emotionally distressed.

62. The Plaintiff did not understand why negative information was being reported by Experian, especially after seeing the aforementioned February report by Experian which contained no negative information.

63. The Plaintiff incurred financial damages and emotional distress because his home loan application was denied.

64. The Plaintiff had to change is life plans and explain to his family why they would not be able to move.

### D. Disputing Information with Experian

65. After the Plaintiff's mortgage application was denied, the Plaintiff called Experian and tried to dispute information they were reporting, and obtain an explanation about why Experian had previously sent him a report containing no negative information.

66. In response to the above-mentioned inquiry, the Plaintiff was told that he needed to send a letter because disputes were not taken over the phone.

67. The Plaintiff sent Experian a letter which explained the problems he was facing regarding his consumer reports.

68. Approximately 30 days after the Plaintiff sent his dispute letter, Experian sent the Plaintiff a written statement indicating that negative information had been investigated and no errors had been found.

69. The Plaintiff called Experian to request a reinvestigation, but was told again that he needed to send a letter.

70. The Plaintiff sent a letter requesting a reinvestigation.

71. Approximately thirty days after sending his second letter, the Plaintiff did not receive any response from Experian. The Plaintiff then called Experian and was again told to write another letter.

72. Thirty days after sending his third letter, the Plaintiff did not receive any response from Experian. The Plaintiff then called Experian and was again told to write a letter. He explained that he had sent several letters.

73. The Defendant failed to properly investigate, and failed to reinvestigate the Plaintiff's dispute.

### E. Experian Provided Blank Reports to Plaintiff while Negative Information was Reported the Third Parties

74. As stated *supra*, the Plaintiff was improperly provided a consumer report from the Defendant that contained no negative information.

75. The Defendant was reporting negative information to third parties at the time the above-mentioned report was provided to the Plaintiff.

76. The Plaintiff has regularly checked his consumer credit reports with annualcreditreport.com, and other such companies that compile information for consumers, for the last ten years, approximately.

77. With respect to all consumer reports the Plaintiff received before 2011 from annualcreditreport.com, and other such companies that compile information for consumers, there was never any negative information contained therein that was reported by the Defendant.

78. Upon information and belief, the Defendant has been reporting negative information to third parties for ten years, or more, without providing the Plaintiff any ability to know, understand, and dispute such negative information.

### F. Negative Account Information Contained in Experian Reports

79. After years of failing to disclose the negative information it was reporting to third parties, the Defendant eventually furnished the Plaintiff with consumer reports that did contain negative information.

80. A consumer report was provided by the Defendant to the Plaintiff on or about April 24, 2012 (the "April 2012 report"). This report was provided to the Plaintiff after this litigation was initiated.

81. The above-mentioned consumer report details several accounts containing negative information ("negative accounts") that have been reported by the Defendant for several years.

82. For each negative account contained on the April 2012 report, the Defendant failed to properly investigate the validity of such account pursuant to the 2011 fraud alert.

83. For each negative account contained on the April 2012 report, the Defendant failed to properly investigate the validity of such account pursuant to any disputes by the Plaintiff.

84. For each negative account contained on the April 2012 report, the Defendant failed to properly *reinvestigate* the validity of such account pursuant to any disputes by the Plaintiff.

85. For each negative account contained on the April 2012 report, the Defendant failed to properly verify and delete negative account pursuant to any disputes and fraud alerts by the Plaintiff.

86. The Defendant was reporting many or all of the above-stated negative accounts in 2011 when the Plaintiff received an Experian report that did not contain any such negative accounts.

87. Upon information and belief, the negative accounts contained in the April 2012 report are not the only negative reports that have been reported by the Defendant in the last seven years.

88. Upon information and belief, the Defendant began deleting negative accounts in the Plaintiff's file and consumer report after this litigation was initiated.

89. The Defendant did not attempt to understand or address any of the Plaintiff's issues until this litigation was initiated.

## VI. CAUSES OF ACTION

### COUNT I—Violation of the Federal Fair Credit Reporting Act 15 U.S.C. §1692, *et seq.*, brought by the Plaintiff on behalf of himself and the members of a class

90. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. This cause of action is brought on behalf of the Plaintiff and the members of a similarly situated class.

92. The Plaintiff proposes a class defined as follows: **All consumers who reside in the State of New York who 1) received consumer reports or other credit reports which contained missing negative information, and 2) such missing negative information was being disseminated or published or otherwise made available to third parties.**

93. Pursuant to Federal Rule of Civil Procedure 23, a class is appropriate and preferable in this case because:

A. Based on the fact that automatically generated reports are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

B. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principle question presented by this claim is whether Defendants violated FCRA.

C. Identification of the consumers who received the consumer reports stated in the proposed class definition is a matter of ministerial determination from the records of the Defendants.

D. The precise number of consumers in this class is unknown at this time and can only be discerned through discovery. However, upon information and belief, the Defendants actions and omissions have violated the rights, as defined in FCRA, of thousands of consumers. Therefore, the members of the class are believed to be so numerous that joinder of all members is impractical.

E. The exact numbers and identities of class members are unknown at this time and can only be ascertained through discovery. Identification of the class members is a matter capable of ministerial determination from the Defendants' records.

F. The claims of the Plaintiff for this cause of action are typical of those of the class members. All are based on the same facts and legal theories.

G. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and credit reporting claims. The Plaintiff's interests are consistent with those of the members of the class.

H. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically provided at 15 U.S.C. §1692k for the commencement of class actions as a principle means of enforcing the FCRA.

I. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive and, therefore, would have no effective remedy at law.

J. The members of the class are individual consumers whose rights will not be vindicated in the absence of a class action.

K. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

L. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant and other debt collectors. Conversely, adjudications with respect to individual class members would be dispositive of the interest of all other class members.

M. The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner to vindicate the injuries sustained by Plaintiff and the other members of the class.

94. Under this Count, the Defendant violated the federal Fair Credit Reporting Act against the Plaintiff and class members

 A. When the Defendant failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as required by 15 U.S.C. §1681e(b);

 B. When the Defendant failed to clearly and accurately disclose information in the Plaintiff's file, and the files of class members, as required by 15 U.S.C. §1681g(a)(1);

 C. When the Defendant provided the Plaintiff, and class members, a severely inaccurate and incomplete report thereby infringing the Plaintiff's right to obtain a copy of his consumer report as stated in 15 U.S.C. §1681g(c); and

 D. When the Defendant provided the Plaintiff, and class members, an incomplete report with missing negative information that the Defendant was reporting, thereby infringing the Plaintiff's right to dispute information in his file under 15 U.S.C. §1681g(c).

95. Defendant's conduct, actions and omissions were willful, rendering the Defendant liable for actual and punitive damages in an amount to be determined by this Court pursuant to 15 U.S.C. §1681n.

96. In the alternative, Defendant's conduct, actions and inactions were negligent, rendering the Defendant liable for actual damages pursuant to 15 U.S.C. §1681o.

97. Plaintiff is entitled to recover costs from Defendants in an amount to be determined by this Court pursuant to either 15 U.S.C. §§ 1681n or 1681o.

98. This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Fair Credit Reporting Act, and Plaintiff requests that it exercise its equitable jurisdiction.

### COUNT II—Violation of the Federal Fair Credit Reporting Act
### 15 U.S.C. §1692, *et seq.*, brought by the Plaintiff on behalf of himself *individually* and not as part of a class

99. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100. The Defendant violated the federal Fair Credit Reporting Act

   A. When the Defendant failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681li(a)(1)(A);

   B. When the Defendant failed to provide dispute notifications to furnishers of items in dispute as required by 15 U.S.C. §1681li(a)(2)(A);

   C. When the Defendant failed to make a proper notification of whether a dispute was determined to be frivolous or irrelevant as required by 15 U.S.C. §1681li(a)(3)(B);

   D. When the Defendant failed to delete negative information on the Plaintiff's report that could not be verified, thereby violating 15 U.S.C. §1681li(a)(5);

   E. When the Defendant failed to provide the Plaintiff with proper notification of the results of a reinvestigation as required by 15 U.S.C. §1681li(a)(6);

101. Defendant's conduct, actions and omissions were willful, rendering the Defendant liable for actual and punitive damages in an amount to be determined by this Court pursuant to 15 U.S.C. §1681n.

102. In the alternative, Defendant's conduct, actions and inactions were negligent, rendering the Defendant liable for actual damages pursuant to 15 U.S.C. §1681o.

103. Plaintiff is entitled to recover costs from Defendants in an amount to be determined by this Court pursuant to either 15 U.S.C. §§ 1681n or 1681o.

104. This Court has the equitable power to enjoin Defendants from engaging in conduct that violates FCRA, and Plaintiff requests that it exercise its equitable jurisdiction.

### COUNT III – Violations of the New York Fair Credit Reporting Act brought by the Plaintiff on behalf of himself *individually* and not as part of a class

105. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein..

106. Defendant violated the New York Fair Credit Reporting Act

   A. When the Defendant failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as required by N.Y. Gen. Bus. L. §380-j(e);

   B. When the Defendant failed to clearly and accurately disclose information in the Plaintiff's file as required by N.Y. Gen. Bus. L. §380-d.

   C. When the Defendant failed to conduct a reasonable reinvestigation as required by N.Y. Gen. Bus. L. §380-f.

107. As a result of Defendant's conduct, actions and omissions, Plaintiff suffered damages as set forth at paragraph 50 above.

108. Defendant's conduct, actions and inactions were willful, rendering Defendants liable for punitive damages in an amount to be determined by this Court pursuant to N.Y. Gen. Bus. L. § 380-l.

109. In the alternative, Defendant's conduct, actions and inactions were negligent, rendering Defendants liable for actual damages pursuant to N.Y. Gen. Bus. L. § 380-m.

110. Plaintiff is entitled to recover costs from Defendants in an amount to be determined by this Court pursuant to either N.Y. Gen. Bus. Law §§ 380-l or 380- m.

111. This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the New York Fair Credit Reporting Act, and Plaintiff requests that it exercise its equitable jurisdiction.

As a consequence of the above violations, Plaintiff is entitled to compensatory and punitive damages, declaratory relief, and injunctive relief, as requested below:

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Assume jurisdiction of this action;

(b) Declare the Defendant's actions complained herein to be in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*;

(c) Declare the Defendant's actions complained herein to be in violation of the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380 *et seq.*;

(d) Pursuant to Rule 65 of the Federal Rules of Civil Procedure, enter permanent injunctive relief to remedy their violation of law, including but not limited to ordering Defendants to forever cease reporting information on the Plaintiff and class members;

(e) Order Defendants to take appropriate affirmative actions, including training staff members of their obligations under the federal and state FCRA;

(f) Award appropriate actual, statutory, punitive, and compensatory damages to Plaintiff and class members against Defendant;

(g) Award Plaintiff costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3), and 15 U.S.C. §1681o(b); and

(h) Provide such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues.

Dated:   November 29, 2012

                Respectfully submitted,

                By:   /s/ Hashim Rahman

                Hashim Rahman, Esq.
                Rahman Legal
                155 Water Street
                Brooklyn, NY 11201
                hrahman@rahmanlegal.com
                Phone: (347) 433-6139
                Fax:    (347) 382-9457