```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
KAMALADOSS V. SELVAM, pro se,           :
                                         :
                    Plaintiff,           :
                                         :        MEMORANDUM & ORDER
           -against-                     :        12-CV-01828 (DLI)(JO)
                                         :
EXPERIAN INFORMATION SOLUTIONS,          :
INC.,                                    :
                                         :
                    Defendant.           :
                                         :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

In this action, *pro se* plaintiff Kamaladoss Selvam ("Plaintiff")[1] asserts claims against Experian Information Solutions, Inc. ("Defendant") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380 *et seq.* Specifically, Plaintiff alleges that Defendant, a consumer reporting agency, published negative account information about him to third parties, failed to maintain procedures necessary to ensure that he would be furnished with accurate reports, and failed to properly investigate disputes and fraud alerts. (Am. Compl. ¶ 2, Docket Entry No. 18.) At a status conference held on January 2, 2013, U.S. Magistrate Judge James Orenstein concluded that a settlement agreement purportedly entered into by the parties was not enforceable.[2] (Civil Conference Minute Order,

---

[1] On December 17, 2012, Hashim Rahman, Plaintiff's then-attorney, filed a request for a pre-motion conference seeking leave to file a motion to withdraw as counsel. (Dec. 17, 2012 Letter, Docket Entry No. 23.) On January 2, 2013, the Court granted Mr. Rahman's motion to withdraw. As Plaintiff is now proceeding on a *pro se* basis, the Court analyses Plaintiff's submissions liberally and interprets them as raising the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008).

[2] Because Defendant's motion to enforce the purported settlement agreement is dispositive of Plaintiff's claim, the Court interprets the magistrate judge's statements at the status conference as

Docket Entry No. 25.) Defendant filed a timely objection. (Jan. 16, 2013 Letter ("Def.'s Objections"), Docket Entry No. 28.) For the reasons set forth below, the Court finds Defendant's objections are without merit and adopts the magistrate judge's R & R in its entirety.

## BACKGROUND

Defendant contends that, on November 14, 2012, after "extensive negotiation and e-mail correspondence," it purportedly reached an out-of-court agreement with Plaintiff on all material settlement terms. (Def.'s Objection at 2.) The following week, on November 21, 2012, Defendant's counsel emailed a "draft" document, titled "Settlement Agreement and Release," to Plaintiff's then-attorney, Hashim Rahman. (Mar. 1, 2013 Letter, Exhibit B ("Settlement Agreement and Release"), Docket Entry No. 40.) In addition to providing for a "lump sum" settlement payment to Plaintiff, the draft agreement included a 14-page copy of Plaintiff's recently-updated credit profile, confidentiality restrictions, and procedures for handing future questions or disputes concerning Plaintiff's credit report. (*Id.*) On November 28, 2012, however, Plaintiff apparently refused to sign the Settlement Agreement and Release. (Def.'s Objection at 2.)

On December 7, 2012, the parties attended a settlement conference before the magistrate judge, but were unable to reach settlement. (Civil Conference Minute Order, Docket Entry No. 20.) Shortly thereafter, Defendant notified the magistrate judge of its intention to file a motion to enforce the purported settlement agreement. (Dec. 18, 2012 Letter, Docket Entry No. 24.) On January 2, 2013, at a status conference, the magistrate judge heard argument on the merits of Defendant's motion and stated as follows:

Look, it's not a slam-dunk decision by any means, but I do think . . . that the

---

an oral Report and Recommendation ("R & R"). *See* Fed. R. Civ. P. 72(b)(1).

purported settlement is not enforceable under Second Circuit law. I think there was an implied reservation of the right not to be bound in the absence of the writing. I think that's implicit in the communication between counsel on both sides. I'm happy to take [defense] counsel's word that there's been partial performance of the contract but to the extent that that's so, it's what the defendant characterized as with respect to the third element as a non-monetary term . . . .

I'm happy to assume . . . the second element goes in favor of enforcing a settlement. I think the third does not. I think it's clear from the correspondence between counsel that all of the terms were not completely agreed to by the time the settlement fell apart. And, finally, it is the type of contract ordinarily committed to in writing but had not yet been. So while none of the factors is dispositive, I think on balance, they weigh against finding the purported settlement of November 14, 2012 enforceable.

(Status Conference Tr. at 8-9, Jan. 2, 2013, Docket Entry No. 52.)

## **DISCUSSION**

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects. *See* Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear error. *See Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

The Second Circuit "has articulated four factors to guide the inquiry regarding whether parties intended to be bound by a settlement agreement in the absence of a document executed by both sides." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997) (citing

3

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). Courts must consider: "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* "No single factor is decisive, but each provides significant guidance." *Id.* (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74-75 (2d Cir. 1984)).[3]

Here, Defendant makes specific objections to the magistrate judge's findings on three of the four factors: whether there has been a reservation of the right not to be bound in the absence of a writing (factor one); whether all of the terms of the alleged contract have been agreed upon (factor three); and whether the agreement at issue is the type of contract that is usually committed to writing (factor four). (Def's Objections at 2-3.)

## I.     Reservation of Rights

Where "there is a writing between the parties showing that [one party] did not intend to be bound . . . a court 'need look no further than the first factor.'" *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (quoting *RKG Holdings, Inc. v. Simon*, 182 F.3d 901, 901 (2d Cir. 1999)). Defendant argues that there was no reservation by the parties—express or implied—not to be bound in the absence of a signed writing. (Def's Objections at 3-6.) Defendant's objection is without merit. The proposed Settlement Agreement and Release and the related correspondence indicate that the parties did not intend to be bound prior to the execution of a written agreement.

---

[3] The Court need not determine whether state or federal common law controls, because "there is no material difference between the applicable state law or federal common law standard" for the issues raised here. *Ciaramella*, 131 F.3d at 322.

First, the terms of the Settlement Agreement and Release are introduced by a clause that states, "*NOW* THEREFORE, in consideration of the Recitals and mutual promises contained *herein*, and for other good and valuable consideration *hereby* deemed received, the Parties *agree as follows*: . . . ." (Settlement Agreement and Release at 1 (emphasis added).) The Second Circuit, interpreting a materially similar provision, has found that such language "indicates that the parties understood that the written agreement would effectuate a binding contract and not merely memorialize a contract that had already been entered into." *CAC Group Inc. v. Maxim Group LLC*, 2013 WL 1831672, at *2 (2d Cir. May 2, 2013) (citing *Ciaramella*, 131 F.3d at 324)).

Second, the Settlement Agreement and Release contains a merger clause, which provides:

> This Agreement constitutes the sole and entire agreement between Plaintiff and Experian, and supersedes all prior agreements, negotiations, and discussions between the Parties, with respect to the subject matter covered hereby. Plaintiff and Experian each acknowledge that, in entering into this Agreement, they are not relying upon any representations or warranties made by anyone other than those terms and provisions expressly set forth in this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of Plaintiff and Experian, respectively. The Parties further acknowledge and agree that they will make no claim at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever.

(Settlement Agreement and Release ¶ 11.) "The presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella*, 131 F.3d at 324-25 (citing *R.G. Group*, 751 F.2d at 76; *McCoy v. New York City Police Dep't*, 1996 WL 457312, at *2 (S.D.N.Y. Aug. 14, 1996)).

Third, "execution" of the Settlement Agreement and Release required Plaintiff to represent that he entered into the agreement "freely and voluntarily," "received independent legal advice . . . as to the effect and import of its provisions," "fully read and understood" its terms, and "reviewed

5

a copy of his [updated] credit profile." (Settlement Agreement and Release ¶¶ 2, 5, 9.) This language indicates that "[Plaintiff's] signature was meant to signify his voluntary and informed consent to the terms and obligations of the agreement. By not signing, he demonstrated that he withheld such consent." *Ciaramella*, 131 F.3d at 325; *see also Lyman v. New York and Presbyterian Hosp.*, 2012 WL 6135354, at *6 (S.D.N.Y. Dec. 11, 2012), *adopted by* 2013 WL 427178 (S.D.N.Y. Feb 1, 2013) (finding implied reservation not to be bound where draft agreements "provide[d] that by 'signing' the agreement, [plaintiff] represent[ed] that she enter[ed] the agreement 'voluntarily and of her own free will'"); *Jarowey v. Camelot Entm't Group, Inc.*, 2012 WL 7785096, at *5 (S.D.N.Y. Sept. 10, 2012), *adopted by* 2013 WL 1189460 (S.D.N.Y. Mar. 18, 2013) (finding implied reservation not to be bound where "each draft agreement provide[d] that by 'executing' the agreement, each party represents that it has received the necessary advice of counsel and 'consents to the rights, conditions, duties and responsibilities imposed'").

Finally, the parties' email correspondence on November 14, 2012, the date Defendant contends the purported agreement was reached, indicates that they did not intend to bind themselves until the Settlement Agreement and Release had been signed. On that date, Helena Ajudua, Defendant's counsel, emailed proposed settlement terms to Mr. Rahman, Plaintiff's then-attorney, and stated, "Please confirm that this works for [Plaintiff]. Once I receive confirmation I will begin *drafting a settlement agreement for your review*." (Mar. 1, 2013 Letter, Exhibit 2, A, Docket Entry No. 40 (emphasis added).) Later that day, Mr. Rahman responded as follows, "*I will run this by [Plaintiff] but I doubt there will be any objections. I will report back to you shortly. You can go ahead and draft the agreement. Will you be able to send that to me this week*?" (*Id.* (emphasis added).) This correspondence suggests that both parties understood that settlement

6

would be effectuated by written documentation and subject to further review, and further, that Plaintiff had not yet approved the terms of Defendant's proposal. *CAC Group Inc.*, 2013 WL 1831672, at *2 (finding that no *Winston* factors weighed in defendant's favor where "email exchange[s] establishe[d] that both parties understood that the 'deal' would be effectuated by 'documents,' the details of which were still to be settled" and "[plaintiff's] counsel acknowledged that his client had yet to approve the terms of the agreement"); *Ciaramella*, 131 F.3d at 325 ("[The Second Circuit] has held . . . that an attorney's statement that 'a handshake deal' existed was insufficient to overcome 'months of bargaining where there were repeated references to the need for a written and signed document, and where neither party had ever . . . even discussed dropping the writing requirement.'" (quoting *R.G. Group*, 751 F.2d at 76)).

For these reasons, the first factor weighs strongly against enforcement of the alleged agreement.

## II. Partial Performance

Defendant does not object to the magistrate judge's finding that the second factor, whether there has been partial performance on the contract, weighs in favor of finding an enforceable agreement. While it does appear that Defendant partially performed by removing a disputed account from Plaintiff's credit report, the lump sum payment to Plaintiff—arguably the most substantive term of the agreement—has not been made. In any event, the magistrate judge did not err in finding that the second factor weighs in favor of enforcement.

## III. Agreement Upon All Terms

As to the third factor, the magistrate judge's finding that the parties had not yet agreed on all of the settlement terms is supported by the record. Although Defendant contends that the parties reached an agreement on all material terms on November 14, 2012, as discussed above,

7

email correspondence from that same date demonstrates that Plaintiff had yet to review or approve of Defendant's settlement proposal. Nor is there any indication in the record that Plaintiff reviewed the November 21, 2012 draft Settlement Agreement and Release or otherwise agreed to the terms therein.[4] Instead, on November 23, 2012, without indicating that Plaintiff agreed to any of the draft agreement's terms, Mr. Rahman pointed out two problem areas with the document, which, under these circumstances, demonstrates "that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) (recognizing that "even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing" (quoting *Winston*, 777 F.2d at 82-83)).

Thus, the third factor does not weigh in favor of enforcement.

## IV. Type of Agreement

The magistrate judge also found that the final factor, whether the agreement at issue is the type usually put in writing, also weighs in Plaintiff's favor. Where, as here, "the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Ciaramella*, 131 F.3d at 326 (quoting *Winston*, 777 F.2d at 83). Moreover, although the draft agreement here does not involve a particularly complex business arrangement, it

---

[4] Mr. Rahman indicated at the January 2, 2013 status conference that Plaintiff did not review the draft Settlement Agreement and Release before the parties' negotiations stalled. (*See* Status Conference Tr. at 9 ("But what we agreed to was never finalized into writing, and I would always show that to the client for their approval as well, and this was never shown to the client after everything was all said and done. So everything was never all said and done regarding the agreement.").)

8

nonetheless contains confidentiality provisions, as well as provisions setting forth the procedures for the handling of future questions or disputes with Plaintiff's credit report. *See id.* (holding that an agreement that "contain[ed] numerous provisions that will apply into perpetuity" would normally be put in writing). This factor, therefore, counsels against enforcement of the alleged agreement.

In sum, three of the four factors, including, most significantly, the implied reservation of the right not to be bound in the absence of a signed writing, weigh strongly against enforcement. *See Adjustrite Sys., Inc. v. GAB Business Servs., Inc.*, 145 F.3d 543, 551 (2d Cir. 1998) (finding purported agreement unenforceable where, despite partial performance, "three of the four factors strongly point to the conclusion that the parties here did not intend to be bound until the formal documents were negotiated, executed, and delivered").

## CONCLUSION

After conducting a *de novo* review of the portions of the R & R to which Defendant objects, and after finding no clear error in the remainder of the R & R, the R & R issued by the Hon. James Orenstein, U.S. Magistrate Judge, on January 2, 2013 is adopted. Accordingly, Defendant's motion to enforce the purported settlement agreement is denied. This matter is referred to the magistrate judge for further pretrial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
      August 28, 2013

                                      _____/s/_____
                                        DORA L. IRIZARRY
                                    United States District Judge