```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
KAMALADOSS V. SELVAM, *pro se*,          :
                                          :
                        Plaintiff,        :
                                          :           **MEMORANDUM AND ORDER**
            -against-                     :              12-CV-1828 (DLI) (JO)
                                          :
EXPERIAN INFORMATION SOLUTIONS,           :
INC.,                                     :
                                          :
                        Defendant.        :
                                          :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Plaintiff Kamaladoss V. Selvam ("Plaintiff") commenced this action against consumer reporting agency Defendant Experian Information Systems, Inc. ("Defendant") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and New York Fair Credit Reporting Act, N.Y. Gen. Bus. L. § 380, *et seq.* ("NY FCRA"). Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposed. (*See generally* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Dkt. Entry No. 78.) For the reasons set forth below, Defendant's motion is granted in its entirety.

## BACKGROUND

The following facts are supported by the record unless otherwise noted. Plaintiff filed an Amended Complaint on October 10, 2012. The Amended Complaint alleges that the Defendant failed to: 1) "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by 15 U.S.C. § 1681e(b)"; 2) "clearly and accurately disclose information in the Plaintiff's file . . . as required

by 15 U.S.C. § 1681(g)(a)(1)"; 3) provide the Plaintiff with an accurate report thereby infringing on the Plaintiff's right to obtain a copy of his consumer report or to dispute the information in his report under 15 U.S.C. § 1681(g)(c); 4) "conduct a reasonable reinvestigation" into disputed items as required by 15 U.S.C. §1681i(a)(1)(A); 5) "provide dispute notifications to furnishers of items in dispute as required by 15 U.S.C. §1681i(a)(2)(A)"; 6) "make a proper notification of whether a dispute was determined to be frivolous or irrelevant as required by 15 U.S.C. §1681i(a)(3)(B)"; 7) delete negative information on the Plaintiff's report that could not be verified in violation of 15 U.S.C. §1681i(a)(5); 8) "provide the Plaintiff with proper notification of the results of a reinvestigation as required by 15 U.S.C. §1681i(a)(6)"; 9) "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates' as required by [NY FCRA] §380-j(e)"; 10) "clearly and accurately disclose information in the Plaintiff's file as required by [NY FCRA] §380-d;" and 11) "conduct a reasonable reinvestigation as required by [NY FCRA] §380-f." (Amended Compl. ¶¶ 94,100 & 106, Dkt. Entry No. 14) (internal citations omitted). Plaintiff also sought to represent a class of consumers who received credit reports that contained missing or negative information that was then disseminated to third parties. However, Plaintiff withdrew that request in his opposition papers and the issue is now moot. (*Id.* ¶ 92; Pl.'s Opp'n at 6.)

Plaintiff's claims stem from incidents involving credit reports that were furnished to him by Defendant in 2011. On February 24, 2011, Defendant was notified by another consumer reporting agency that Plaintiff had contacted them to dispute inaccurate items on his credit report due to possible fraudulent activity. (Decl. of Jason Scott ("Scott Decl.") attached as Exhibit 3 to Decl. of Helena Ajudua in Support of Def.'s Mot. for Summ. J. ("Ajudua Decl.") at ¶¶ 30, 33, 35, Dkt. Entry No. 74.) On February 24, 2011, Defendant sent Plaintiff a letter explaining a

security alert had been added to his file and enclosing a copy of Plaintiff's consumer credit report. (*Id.* at ¶¶ 31, 33, 36; Exhibit D attached to Scott Decl.) Plaintiff acknowledges having received the letter and consumer credit report. (Dep. of Kamaladoss V. Selvam ("Selvam Dep.") attached as Exhibit 1 to Ajudua Decl. at 110:22-25, Dkt. Entry No. 74.) The February 24, 2011 credit report did not contain any credit account information due to a discrepancy where Defendant assigned Plaintiff two personal identification numbers (PINs) and one of the numbers did not contain credit information for Plaintiff.[1] (Decl. of Kimberly Hughes ("Hughes Decl.") attached as Exhibit 4 Ajudua Decl. at ¶¶ 15-18, 25-28; Scott Decl. ¶¶ 28, 32, 34, 37; Exhibit D attached to Scott Decl.) As a result, Plaintiff did not contact Defendant to dispute any of the credit information because "it [did] not have anything that [he] thought could be damaging towards [him.]" (Selvam Dep. at 163:8-9.) This issue was later remedied sometime on or around March 31, 2011 when Defendant discovered the two PINs during the ordinary course of business and deleted the PIN missing Plaintiff's credit information. (Hughes Decl. ¶ 31.)

Plaintiff applied for a car loan for approximately $25,000-$30,000 from the Municipal Credit Union ("MCU") in or around January 2011. (Amended Compl. ¶ 34; Selvam Dep. at 371: 21-22.) In April 2011, Plaintiff received a denial letter from MCU.[2] (Letter dated April 28, 2011 from MCU attached as Exhibit W to Pl.'s Answer to Def.'s Rule 56.1 Statements, Dkt.

---

[1] The PIN without Plaintiff's full account information is known in the consumer credit industry as a "fragmented PIN." (Hughes Decl. ¶ 18.)

[2] Plaintiff cannot produce a clear record of what happened following his loan application to MCU. In Plaintiff's Amended Complaint and Deposition, he states that the loan was "neither denied nor accepted", but, because "Plaintiff's credit report showed several delinquencies," he could not receive a loan unless he provided a 20% down payment. (Amended Complaint ¶ 35; Selvam Dep. at 327:8-16, 20-22.) However, Plaintiff also attached a denial letter from MCU in his opposition to Defendant's Motion for Summary Judgment. (*See* Letter dated April 28, 2011 from MCU attached as Exhibit W to Pl.'s Answer to Def.'s Rule 56.1 Statements.) The Court finds this distinction, while reflective of Plaintiff's reliability, is not an issue of material fact worthy of denying summary judgment as it relates to damages and not Defendant's liability. The Court does not reach the issue of damages as, discussed *infra*, it finds the Defendant is not liable.

3

Entry No. 78.)[3] Plaintiff does not know if MCU received a credit report from Defendant in connection with the application process. (Selvam Dep. at 96:10-19.) Plaintiff applied for a home loan for approximately $500,000-$600,000 in or around May or June 2011. (Amended Compl. ¶ 54; Selvam Dep. at 298: 7-11.) The home loan was denied orally due to too many delinquencies on Plaintiff's credit report. (Selvam Dep. at 313:24-25.) Rels Credit provided this particular credit report, which included information from Defendant as well as two other consumer reporting agencies not named as parties here. (*See* Rels Report attached as Exhibit 8 to Ajudua Decl.)[4]

After his home loan was denied, Plaintiff contacted Defendant on June 16, 2011 to dispute negative information contained in his credit report. (Scott Decl. ¶ 58.) Over the next year, Plaintiff disputed a total of seven negative accounts appearing in Defendant's credit report for Plaintiff: one Bank of America account; two GECRB/Care Credit accounts; one LVNV Funding account; one Unique National Collection account; one Metabank-Ultravx Visa account; and one RJM ACQ LLC account. (*See generally* Scott Decl. with Exhibits A-P.)[5] As detailed below, Defendant prepared an Automated Consumer Dispute Verification ("ACDV") and sent it to the entity furnishing the information to Defendant after each time Plaintiff disputed an

---

[3] Defendant objects to the inclusion of Plaintiff's Exhibits B, H, L, O, V, W and X in the record as not having been produced during discovery, nor presented to any witnesses for identification, nor properly authenticated. (Decl. of Helena O. Ajudua in Supp. of Def.'s Reply ¶¶ 5-6, Dkt. Entry No. 83.) However, given Plaintiff's *pro se* status, the Court relies on the exhibits for background information only in order to present a complete story. The Court does not rely on these exhibits for its decision of the motion at bar.

[4] The facts regarding Plaintiff's car and home loan applications are substantiated mostly through Plaintiff's testimony. Plaintiff did not have any written documentation regarding his loan applications or the denial of the home loan as he "tore [the papers] up." (Selvam Dep. at 375:2-5.) Plaintiff also has not produced any affidavits or depositions from the loan officers who processed Plaintiff's loan applications. However, these facts are considered as they are supported by Plaintiff's deposition and Amended Complaint and as Defendant submitted them in its 56.1 Statement of the Facts.

[5] For various reasons, all of these negative accounts have been deleted from Plaintiff's credit account. (Scott Decl. ¶ 58.)

account. (Scott Decl. ¶¶ 16, 19, 38.) An ACDV is one way that Defendant investigates a consumer dispute. (*Id.* ¶16.) An ACDV is sent to the furnisher of the disputed information and asks the furnisher to verify, amend, or delete the reported information. (*Id.*) Defendant removes the disputed information from the consumer's credit file when the ACDV is either: 1) not returned within a reasonable time; 2) does not verify Defendant's information; or 3) contains information that the Defendant finds unreliable. (*Id.* ¶ 20.) Defendant then updated Plaintiff's credit report in accordance with the results of the ACDV and notified Plaintiff of their actions. (*Id.* ¶ 39.)

Defendant has provided the court with declarations from its representatives, copies of ACDVs sent for each disputed account, and credit reports dated from February 2010 to August 2012. (*See* Scott Decl.) Plaintiff has provided no evidence, beyond his allegations, to show that Defendant did not investigate or reinvestigate the disputed accounts. Because Plaintiff has produced no evidence, the court has no choice but to determine that the accounts never were reported incorrectly.

1. Bank of America Account

On or about June 16, 2011 Plaintiff disputed a Bank of America account on his credit report as being more than seven years old. (*Id.* ¶ 38.) In response, Defendant sent an ACDV to Bank of America. (*Id.*; Exhibit E attached to Scott Decl.) Bank of America verified the account. (Scott Decl. ¶ 39; Exhibit E.) In or around July 2012, after this case was filed, Plaintiff again disputed the account, but this time as the result of fraudulent activity.[6] (Scott Decl. ¶ 54.) At no time has Plaintiff provided Defendant with any documentation to show that he was the victim of

---

[6] At no time has Plaintiff provided Defendant with any documentation to show that he was the victim of fraud or identity theft because, as Plaintiff has admitted, he is not in possession of such documentation. (*See* Scott Decl. ¶¶ 51-54, 60; Pl.'s Objections and Resp. to Def.'s First Set of Document Requests attached as Exhibit 5 to ). Plaintiff also is not sure whether identity theft actually occurred. (Selvem Dep. 103:2-11.) However, after Plaintiff initially told Defendant he was the victim of identity theft, Defendant added an Initial Security Alert to Plaintiff's file.

fraud or identity theft because, as Plaintiff has admitted, he is not in possession of such documentation. (*See id.* ¶¶ 51-54, 60; Pl.'s Objections and Resp. to Def.'s First Set of Document Requests attached as Exhibit 5 to ). Plaintiff also is not sure whether identity theft actually occurred. (Selvem Dep. 103:2-11.) However, after Plaintiff initially told Defendant he was the victim of identity theft, Defendant added an Initial Security Alert to Plaintiff's file.

Defendant again sent an ACDV to Bank of America. (*Id.* ¶ 54; Exhibit O attached to Scott Decl.) Once again, the account was verified and remained on Plaintiff's credit report. (Scott Decl. ¶ 55; Exhibit O.) On both occasions, Defendant notified Plaintiff of their actions and the results. (Exhibits F & P attached to Scott Decl.) On or about November 19, 2012, Defendant deleted the account from Plaintiff's credit report as part of ongoing settlement negotiations related to this case. (Scott Decl. ¶ 57.) During his deposition, Plaintiff acknowledged that the account belonged to him, though he disputes the terms of the account. (Selvem Dep. at 270:20-272:24.)

2. <u>GECRB/Care Credit Accounts</u>

On or about June 16, 2011, Plaintiff disputed two GECRB/Care Credit accounts on his credit report as not belonging to him. (Scott Decl. ¶ 38.) In response, Defendant sent ACDVs to GECRB/Care Credit. (*Id.*; Exhibit E attached to Scott Decl.) GECRB/Care Credit verified the accounts. (*Id.*) On or about July 19, 2011, Plaintiff again disputed the accounts as not his. (Scott Decl. ¶ 41.) Once again, Defendant sent ACDVs to GECRB/Care Credit, which verified the accounts. (*Id.* ¶ 42; Exhibit G attached to Scott Decl.) On or about December 26, 2011, Plaintiff asked Defendant for information about the accounts, to which Defendant responded with information. (Scott Decl. ¶¶ 44-45; Exhibits I & J attached to Scott Decl.) In or around July 2012, Plaintiff again disputed the accounts, but this time as the result of fraudulent activity.

(Scott Decl. ¶ 54.) Defendant reinvestigated the accounts by sending ACDVs to GECRB/Care Credit. (*Id.*; Exhibit O attached to Scott Decl.) GECRB/Care Credit verified the accounts. (Scott Decl. ¶ 55; Exhibit O.) After every investigation, Defendant notified Plaintiff of the results. (Exhibits F, G & P attached to Scott Decl.) In or around December 2012, GECRB/Care Credit contacted Defendant to request that Defendant delete the two accounts. (Scott Decl. ¶ 56.) GECRB/Care Credit gave no reason for the deletion. (*Id.*)

### 3. LVNV Funding Account

On or about December 12, 2011, Plaintiff requested information about the LVNV Funding, Inc. account appearing on his credit report. (*Id.* ¶ 44; Exhibit I attached to Scott Decl.) Defendant, in response, sent an ACDV to LVNV Funding, Inc. (Scott Decl. ¶ 47; Exhibit K attached to Scott Decl.) LVNV Funding, Inc. verified the account. (Scott Decl. ¶ 48; Exhibit K.) In or around July 2012, Plaintiff disputed the account, alleging fraudulent activity. (Scott Decl. ¶ 54.) Defendant again sent an ACDV to LVNV Funding, Inc. (*Id.*; Exhibit O attached to Scott Decl.) LVNV Funding, Inc. requested deletion of the account without providing a reason for the request. (Scott Decl. ¶ 55; Exhibit O.) Defendant deleted the account. (Scott Decl. ¶ 55; Exhibit P.) After each investigation, Defendant notified Plaintiff of the results. (Exhibits L & P attached to Scott Decl.)

### 4. Unique National Collection Account

On or about June 16, 2011, Plaintiff disputed a Unique National Collection account on his credit report as not his account. (Scott Decl. ¶ 38.) In response, Defendant sent an ACDV to Unique Management Services, the furnisher of the account. (*Id.*; Exhibit E attached to Scott Decl.) Unique Management Services verified the account. (Scott Decl. ¶ 39; Exhibit E.) Defendant notified Plaintiff of the results of the investigation. (Exhibit F attached to Scott Decl.)

7

5. Metabank-Ultravx Account

On or about June 16, 2011, Plaintiff disputed a Metabank-Ultravx Visa account on his credit report as a "pre-paid card." (Scott Decl. ¶ 38.) Defendant sent an ACDV to the furnisher of the account. (*Id*; Exhibit O attached to Scott Decl.) Defendant deleted the account because the furnisher did not respond to the ACDV by the response due date. (Scott Decl. ¶ 39.) Defendant notified Plaintiff of the deletion. (Exhibit F attached to Scott Decl.)

6. RJM ACQ LLC Account

In or around July 2012, Plaintiff disputed an RJM ACQ LLC account appearing on his credit report as the result of fraudulent activity. (*Id.* ¶ 54.) Defendant sent an ACDV to the furnisher of the account. (*Id.*) Defendant deleted the account because the furnisher did not respond to the ACDV by the response due date. (*Id.* ¶ 55.) Defendant sent a letter to Plaintiff notifying him of the deletion. (Exhibit P attached to Scott Decl.)

## DISCUSSION

### I. Legal Standards

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.,* 409 F.3d 565, 569 (2d Cir.2005)(citation and internal quotation marks omitted).

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a

'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

Local Civil Rule 56.1 requires that a party moving for summary judgment include with the motion a "separate, short, and concise statement of the material facts to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). "When a party has moved for summary judgment . . . and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992). In cases involving a *pro se* litigant, Local Civil Rule 56.2 requires that: "[a]ny represented party moving for summary judgment against a party proceeding pro se shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice to Pro Se Litigant

Opposing Motion for Summary Judgment' in the form indicated below." Local Civ. R. 56.2. "The notice referred to in the rule advises the *pro se* litigant of the possibility that the complaint may be dismissed and informs the litigant that she must submit evidence countering the facts asserted by the defendant and raising issues of fact for trial." *Arum v. Miller,* 304 F. Supp. 2d 344, 349 (E.D.N.Y.2003). In the instant case, Defendant submitted a Rule 56.1 statement and Rule 56.2 notice. Plaintiff filed a Rule 56.1 Statement in Opposition to Defendant's statement. Thus, the motions are properly before this Court.

The FCRA and the NY FCRA are interpreted in the same manner. *See Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005). Accordingly, where appropriate, the court's conclusions as to FCRA provisions also apply to the relevant companion provisions of New York's FCRA.

## II.  FCRA § 1681e(b) & NY FCRA § 380j(e)

Under the FCRA, consumer reporting agencies have a duty to follow reasonable procedures to assure the maximum possible accuracy of consumer information when preparing a consumer report. 15 U.S.C. § 1681e(b). In order to maintain a cause of action under § 1681e(b), a plaintiff must show that: (1) the consumer reporting agency negligently or willfully failed to follow reasonable procedures to insure the accuracy of the credit report; (2) the information was inaccurate; (3) there was an injury; and (4) the injury was a result of a failure to follow reasonable procedures. *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994). The threshold question is whether the challenged information was inaccurate. *Id.* However, even if the information is inaccurate, a plaintiff must still present some evidence from which a trier of fact could infer that a consumer reporting agency failed to follow

reasonable procedures in preparing his credit report. *Id.* (citing *Stewart v. Credit Bureau, Inc.* 734 F.2d 47, 51 (D.C. Cir. 1984)).

Plaintiff has failed to present evidence that Defendant violated section 1681e(b) of the FCRA. As an initial matter, the challenged information is accurate. Although Plaintiff disputed the information as "not his" or the result of "identity theft," Defendant submitted evidence that its' investigations verified the disputed accounts. The only times that Defendant was unable to verify the accounts was when the account furnishers did not provide Defendant with information, and Defendant promptly deleted those accounts. Furthermore, Plaintiff has not submitted any evidence to support his claims that the accounts were not his or that they were the result of fraudulent activity. Plaintiff only offered his own statements, which are contradictory, as he stated in his deposition that he may have been "mistaken" about whether the accounts were the result of identity theft. (Selvem Dep. at 103:2-11.) Therefore, no reasonable jury could believe that the accounts were inaccurate.

Additionally, Plaintiff is unable to show that Defendant negligently or willfully failed to follow reasonable procedures to ensure the accuracy of Plaintiff's credit report. Defendant did provide Plaintiff with a credit report containing no credit history for Plaintiff on February 24, 2011. However, Defendant identified the problem, and by the end of March 2011, the issue had been resolved. Defendant acted reasonably in investigating all of Plaintiff's disputes. After each time Plaintiff contacted Defendant about an account, Defendant performed an investigation into the disputed information and updated Plaintiff's credit report accordingly. These updates included deleting negative information if not verified by the furnisher of the information. Based on the evidence in this record, the Court finds no sign that Defendant willfully or negligently failed to follow reasonable procedures to insure the accuracy of Plaintiff's credit report.

For these reasons, summary judgment is granted for the Defendant on Plaintiff's claims arising under the FCRA § 1681e(b) and the NY FCRA § 380-j(e).

### III.  FCRA § 1681(g) & NY FCRA § 380-d

The FCRA requires that a consumer reporting agency clearly and accurately disclose to a consumer all information in a consumer's file. 15 U.S.C. § 1681(g)(a)(1). Section 1681(g)(c) grants a consumer the right to obtain a copy of his credit report. *See* 15 U.S.C. § 1681(g)(c). However, a consumer reporting agency can be sued only for willful or negligent violations of this section. *See* 15 U.S.C. §§ 1681n & 1681o; *Menton v. Experian Corp.*, 2003 WL 941388, *2 (S.D.N.Y. Mar. 6, 2003) ("[T]he FCRA provides for damages for each act of *intentional* non-compliance with its provisions.") (emphasis added).

Plaintiff has not produced any evidence that Defendant willfully or negligently failed to follow reasonable procedures when providing Plaintiff with his credit reports. As discussed *supra*, although Defendant did provide Plaintiff with a blank credit report in February 2011, Defendant promptly addressed the problem the following month. Plaintiff did not complain to Defendant or request a copy of his credit report after receiving the faulty report, even though he should have been aware that something was wrong as Plaintiff clearly had a credit history. Furthermore, Defendant never refused Plaintiff a copy of his credit report, which would have constituted a violation under this section. Therefore, summary judgment is granted for the Defendant on Plaintiff's claims arising under the FCRA § 1681(g) & NY FCRA § 380-d.

### IV.  FCRA § 1681i(a)(1)-(3), (6) & NY FCRA § 380-f

The FCRA requires that a consumer reporting agency reasonably reinvestigate any disputed information contained within a consumer's credit report after receiving a direct dispute from the consumer. *See* 15 U.S.C. § 1681i(a)(1)(A). Upon receiving such a dispute, a consumer

reporting agency has thirty days to perform the reinvestigation, which includes providing dispute notifications to furnishers and then notifying the consumer of the results, even if the dispute was determined to be frivolous or irrelevant. *See* 15 U.S.C. §§ 1681i(a)(2)(A), (a)(3)(B), & (a)(6)(A).

Plaintiff has not produced any evidence that Defendant failed to discharge its duty to reinvestigate the disputes in a reasonable manner. The reinvestigation procedure used by Defendant, as detailed in the Scott Declaration, was that Defendant: (1) reviewed the dispute letters and all enclosures; (2) sent an ACDV to the furnisher with a dispute code and information to identify properly the consumer's dispute if the enclosures were not sufficient to resolve the dispute; and (3) modified the consumer's account once the furnisher returned the ACDV, at times deleting the account, if the furnisher failed to return the ACDV or verify it appropriately. (*See* Scott Decl. ¶¶ 7-24.) As discussed above, Defendant, without exception, sent ACDVs to the account furnishers each time Plaintiff told Defendant his accounts were incorrectly reported. Moreover, the uncontroverted evidence presented to the Court shows that, within thirty days of having received each of Plaintiff's disputes, Defendant updated each account according to the information it received from the furnishers. Lastly, Defendant notified Plaintiff by letter of the results. None of Plaintiff's disputes were deemed frivolous or irrelevant, even though it appears that some of Plaintiff's allegations of fraudulent activity were unfounded.

Additionally, Plaintiff's dispute letters sent during the relevant time period contained little more than categorical disputes as to the validity of the debt. Thus, Plaintiff did not raise any significant factual challenge to the accuracy or reliability of the original source of the reported information, or provide Defendant with information supporting his allegations of fraud. Under these circumstances, the procedure followed by Defendant was reasonable as a matter of

law. *See Fashakin v. Nextel Communs.*, 2009 WL 790350, at *10 (E.D.N.Y. Mar. 25, 2009) ("Where the consumer has given the consumer reporting agency no reason to question the accuracy of the initial information provided by the subscriber, the consumer reporting agency fulfills its obligation to reasonably reinvestigate by confirming the accuracy of the debt with the creditor." (citing *Podell v. Citicorp Diner's Club, Inc.*, 914 F. Supp. 1025, 1032 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997))); *cf. Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008) ("Plaintiff sent a copy of his Grant Deed in Lieu of Foreclosure, as well as a detailed letter explaining the inaccuracies, to Experian in connection with its investigation."). Therefore, summary judgment is granted as to Plaintiff's claims arising under the FCRA § 1681i(a) and the NY FCRA § 380-f.

## V.  FCRA § 1681i(a)(5)

The FCRA mandates that disputed information must be deleted from a consumer's credit report if it cannot be verified pursuant to a reinvestigation. 15 U.S.C. § 1681i(a)(5)(A). If a consumer reporting agency wants to reinsert previously deleted information into a consumer's credit report, it must certify the accuracy of the information with the information furnisher, and notify the consumer of the reinsertion. 15 U.S.C § 1681i(a)(5)(B). Moreover, a consumer reporting agency is required to maintain reasonable procedures designed to prevent such previously deleted information from being reinserted into a consumer's credit report. 15 U.S.C § 1681i(a)(5)(C).

Plaintiff has not produced any evidence that Defendant failed to delete disputed information from his credit report after it could not be verified. Only two of Plaintiff's accounts were not verified, the Metabank Ultravx and RJM ACQ LLC accounts, and Defendant deleted

14

both accounts as a result. As such, summary judgment is granted for Defendant as to Plaintiff's claim arising under the FCRA §1681i(a)(5).

**VI.    Damages**

As the Court has found Defendant did not violate the FCRA or NY FCRA, it does not reach the issue of damages. However, the Court notes that, after reviewing the record, it is not convinced Plaintiff suffered any damages. Plaintiff has not provided sufficient proof of the monetary or emotional harm he suffered as a result of Defendant's conduct or that Defendant's actions were the cause of any alleged harms.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety. The court certifies pursuant to 28 U.S.C. § 19l5(a)(3) that any appeal would not be taken in good faith. Therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
        March 24, 2015

/s/
DORA L. IRIZARRY
United States District Judge
